# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

## In re: Chester B. Steenes, *et al.*,

| | |
|---|---|
| **CITY OF CHICAGO**, <br> an Illinois Municipal Corporation, | ) <br> ) <br> ) |
| *Appellant* | ) <br> ) |
| v. | ) <br> ) |
| **MARILYN O. MARSHALL**, <br> not individually, but solely as the <br> Chapter 13 Trustee of the <br> bankruptcy estates of <br> Chester B. Steenes, *et al.*, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| *Appellee.* | ) |

Appeal from the United States Bankruptcy Court,
Northern District of Illinois, Eastern Division
Bankruptcy Case Nos. 13-46330; 14-16692; 14-17256; 14-33498; 16-08230; 16-20534

## RESPONSE BRIEF OF TRUSTEE-APPELLEE
## MARILYN O. MARSHALL

### Attorney for Trustee-Appellee,

Lauren L. Tobiason
Office of the Chapter 13 Trustee
Marilyn O. Marshall
224 S. Michigan Ave., Suite 800
Chicago, IL 60604
(312) 431-1300

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Summary of Argument ....................................................................................... 1

Argument ............................................................................................................. 2

    I.  The City's Claims Fail the Administrative Expense Test of
        Section 503(b)(1)(A) .......................................................................... 3

        A.  The City's claims do not meet the *Reading* test ................................ 6

        B.  The City did not object to confirmation of the debtors' plans ......... 11

    II.  The Appropriate Relief for the City is to Recover Directly from
        the Individual Debtor, Move for Relief from the Automatic Stay,
        or Seek Dismissal of the Case ............................................................ 13

Conclusion .......................................................................................................... 16

Certificate of Compliance ................................................................................. 17

## Cases

*Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759 (1968) ................ 1,2,6,7,11

*Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 131 S.Ct. 716 (2011).............. 3

*U. S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S.Ct. 1026 (1989) ............... 3

*Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S. Ct. 1023 (2004) ........................... 3

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380, 113 S.Ct. 1489 (1993)...................................................... 3

*Matter of Handy Andy Home Improvement Centers, Inc.*,
144 F.3d 1125 (7th Cir. 1998).............................................................. 3

*In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984)............................................ 4,5

*In re Specialty Chem Prods. Corp.*, 372 B.R. 434 (E.D. Wis. 2007) ................. 4

*In re Nat'l Steel Corp.*, 316 B.R. 287 (Bankr. N.D. Ill. 2004) ........................... 4

*In re Chicago, Milwaukee, St. Paul & Pacific Railroad*,
658 F.2d 1149 (7th Cir. 1981)............................................................... 4

*In re Mammoth Mart*, 536 F.2d 950, 953 (1st Cir. 1976) .................................. 5

*In re Brewer*, 233 B.R. 825 (Bankr. E.D. Ark. 1999) ........................................ 5

*In re Stokes*, No. 06-11296, 2010 WL 3980232
(Bankr. E.D. Tenn. Oct. 8, 2010))......................................................... 6

*In re Badgley*, 308 B.R. 293 (Bankr. E.D. Mich. 2004) ................................... 8,9

*Chicago v. Fisher* (*In re Fisher*), 203 B.R. 958 (N.D. Ill. 1997) ...................... 12

*Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1991) ................................... 14,15

*In re Sidebottom*, 430 F.3d 893(7th Cir. 2005)................................................ 15

## Statutes and Rules

11 U.S.C. § 362(c) ........................................................................... 1,4

11 U.S.C. § 503(a) ................................................................................................ 1

11 U.S.C. § 503(b)(1)(A) ................................................................................. 1,2,4,8

11 U.S.C. § 1307(c) .......................................................................................... 2,10,14

11 U.S.C. § 362(d) ................................................................................................ 2,13

11 U.S.C. § 503(b)(1)(B) ....................................................................................... 6,7

11 U.S.C. § 503(b)(1)(C) ......................................................................................... 7

11 U.S.C. § 1102 ...................................................................................................... 7

11 U.S.C. § 1302(c) ................................................................................................. 8

11 U.S.C. § 1103 ...................................................................................................... 8

11 U.S.C. § 1101 ...................................................................................................... 8

11 U.S.C. § 1107 ...................................................................................................... 8

11 U.S.C. § 1106 ...................................................................................................... 8

11 U.S.C. § 541 ...................................................................................................... 11

11 U.S.C § 1306 ..................................................................................................... 11

11 U.S.C § 362(a)(3) ............................................................................................. 12

11 U.S.C § 1325(a) .................................................................................................. 7

Federal Rule of Bankruptcy Procedure 2015 ........................................................ 8

# SUMMARY OF ARGUMENT

The bankruptcy court did not error when it denied the Motions Under § 503(a)[1] for Allowance and Payment of Administrative Expenses ("*Motions*") filed by the City of Chicago (the "*City*") in these consolidated appeals.[2] The bankruptcy court properly interpreted the plain language of section 503(b)(1)(A). In its brief, the City relies heavily on *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759 (1968) ("*Reading*") and the form confirmation order used in this district. However, the analysis in *Reading* should not be extended to individual chapter 13 cases. The intent and purpose of chapter 13 is simply not analogous to the chapter 11 case in *Reading* or the other cases cited by the City that it has been applied in. The City has not provided any authority where it has been applied in a chapter 13 case. The result would be unfair discrimination and an undue burden on the chapter 13 estate. In addition, the City did not appear and object to the entry of the form confirmation order in any of these consolidated cases.

---

[1] Unless otherwise stated, all statutory references are to Title 11 of the United States Code.

[2] On May 5, 2017, this Court entered orders consolidating the following cases on appeal for a single set of briefs under the above captioned case—*Chicago v. Marshall* (*In re Steenes*), 17-cv-2308:

1. *Chicago v. Marshall* (17-cv-2308) appealed from *In re Steenes* (14-bk-16692)

2. *Chicago v. Marshall* (17-cv-2309) appealed from *In re Allen* (14-bk-17256)

3. *Chicago v. Marshall* (17-cv-2311) appealed from *In re Woodward* (14-bk-33498)

4. *Chicago v. Marshall* (17-cv-2314) appealed from *In re Jones* (13-bk-46330)

5. *Chicago v. Marshall* (17-cv-2316) appealed from *In re Dudley* (16-bk-08230)

6. *Chicago v. Marshall* (17-cv-2319) appealed from *In re Henry* (16-20534)

Under the plain language of section 503(b)(1)(A), in order to receive an administrative expense priority, the City must show, by a preponderance of the evidence, that (1) the claim arose from a post-petition transaction with the estate and (2) was beneficial to the estate. The City has failed to meet that burden here. None of the specifically enumerated examples of allowed administrative expenses in section 503(b) apply to the City's claims. Accordingly, the City is not entitled to the payment of an administrative expense pursuant to section 503(a) for the post-petition fines incurred by the individual debtors in the Bankruptcy Cases. This interpretation is consistent with the plain language of the Bankruptcy Code and the legislative history of the statute. If the City is unable to recover the fines directly from the debtor, the City may file a motion to dismiss the case pursuant to section 1307(c) or the City may move to lift the automatic stay pursuant to section 362(d) in order to pursue repossession of the vehicle just as any other post-petition creditor whose claims do not qualify for administrative expense priority under 503(b) would be required to do.

## ARGUMENT

The bankruptcy court did not error in finding that the Appellee is not entitled to an administrative expense claim pursuant to section 503(b)(1)(A) when the Appellee could not demonstrate that the fines arose from a post-petition transaction with the estate, were beneficial to the estate in any way, or that any of the other specifically enumerated examples of allowed administrative expense claims in section 503(b) applied. The bankruptcy court properly declined to extend *Reading* to chapter 13

cases and instead found that the debtor, not the chapter 13 bankruptcy estate, remains responsible for the payment of the City's fines.

## I. The City's Claims Fail the Administrative Expense Test of Section 503(b)(1)(A).

The "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statue itself.'" *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69, 131 S.Ct. 716 (2011) (quoting *U. S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026 (1989)). When a statute's language is plain, the sole function of the court is to enforce it according to its terms, except where doing so would lead to absurd results. *Lamie v. U.S. Trustee*, 540 U.S. 526, 533, 124 S. Ct. 1023 (2004). "Courts properly assume, *absent sufficient indication to the contrary*, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning'." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 113 S.Ct. 1489 (1993) (quoting *Perrin v. U. S.*, 444 U.S. 37, 42, 100 S.Ct. 311 (1979)) (emphasis added). "[T]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843 (1997) (citation omitted). The context consists not merely of other sentences but also of the real-world situation to which the language pertains. *Matter of Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1128 (7th Cir. 1998).

Section 503 of the Bankruptcy Code provides, in relevant part, as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
>> (1)(A) the actual, necessary costs and expenses of preserving the estate including—
>>
>> (i) wages, salaries, and commissions for services rendered after the commencement of the case. . . .

11 U.S.C. 503(b)(1)(A).

An administrative claim will be afforded priority under section 503(b) if the debt "both (1) arises from a transaction with the debtor-in-possession and (2) is beneficial to the debtor-in-possession in the operation of the business." *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984) (quotations omitted). "Despite the potentially broad reach of 503(b), 'administrative priority claims are to be strictly construed because the presumption in bankruptcy cases is that the debtor has limited resources that will be equally distributed to creditors.'" *In re Specialty Chem Prods. Corp.*, 372 B.R. 434, 440 (E.D. Wis. 2007) (quoting *In re Nat'l Steel Corp.*, 316 B.R. 287, 299 (Bankr. N.D. Ill. 2004)).

The moving party bears the burden of showing, by a preponderance of the evidence, that its claim is entitled to administrative expense priority. *Id.* (citations omitted). "[P]riority should not be afforded unless it is founded on a clear statutory purpose, if the appellants' claim does not comport with the language and underlying purposes of § 503, their claim must fail." *In re Jartran*, 732 F.2d at 586 (citing *In re Chicago, Milwaukee, St. Paul & Pacific Railroad*, 658 F.2d 1149, 1163 (7th Cir. 1981) (general rule is equality of distribution; deviation must appear in the statute),

*cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632 (1982). "Any preference for claims not intended by Congress to have priority would dilute the value of the intended priority and thus frustrate the intent of Congress." *Id.* (citing *In re Mammoth Mart*, 536 F.2d 950, 953 (1st Cir. 1976). "The language of this statute has generally been construed to mean that in order to claim administrative expense, a creditor must demonstrate that the expense actually benefitted the estate." *In re Brewer*, 233 B.R. 825, 828 (Bankr. E.D. Ark. 1999) (citations omitted).

There is no transaction with the chapter 13 estate and there is no benefit to the chapter 13 estate provided by the City. These debtors are not operating a business or liquidating an estate. The violation is incurred and assessed directly against the debtor as the owner of the vehicle, not the vehicle itself, the estate asset (City's Brief at pages 6 and 15). Title to the vehicle does not transfer out of the debtors' name and into the estate's name upon case filing, confirmation, or anytime thereafter. The estate does not maintain the registration or required insurance on the vehicle, nor does the estate perform routine maintenance and upkeep of the vehicle. It is the debtors' who remain as titleholders and owners of the vehicle. It is the debtors who have violated the law and not the estates or the Trustee. Therefore, the bankruptcy court properly found that the City failed to meet the administrative expense test as set forth in *Jartran*. *See* Transcript of Hearing dtd March 23, 2017 at 12:4-10, *In re Clarence Jone*s (13 B 46330).

A.    The City's claims do not meet the *Reading* test

The Trustee acknowledges that in *Reading* the U.S. Supreme Court did carve out a limited exception to the second element of the administrative expense test when the post-petition creditor is an involuntary creditor.  This exception replaces the "benefit to the estate" standard with one of the "decisive, statutory objective" of fundamental fairness.   391 U.S. at 477.   The application of this standard to an individual chapter 13 case, however, is improper.   In fact, it would be fundamentally unfair to allow the City to be paid before pre-petition creditors of the estate in lieu of exercising their remedies directly against these debtors.

There is no chapter 13 case law cited in the City's brief that supports allowing this type of administrative claim in a chapter 13 case.  The one chapter 13 case cited in the City's Brief, *In re Stokes*, No. 06-11296, 2010 WL 3980232 (Bankr. E.D. Tenn. Oct. 8, 2010) did allow a priority administrative expense claim for post-petition unpaid property taxes because the real property was determined to be property of the estate, and not the debtor's until the debtor had completed the plan. However, property taxes incurred are specifically listed in section 503(b)(1)(B), penalties and fines like the violations here are not.   Clearly Congress intended to make a specific allowance for property taxes at issue in *Stokes*.   Congress did not, however, make such a specific allowance for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit.   As explained by Judge Timothy A. Barnes, the *Stokes* case is

> distinguishable from a car because here it is behavior by
> the debtor that is incurring these expenses, not the

nature of the estate's property that is incurring these expenses. The debtor is going out and doing something that is creating an additional debt. It isn't the nature of the estate's property that is creating the debt as it would be with real estate that accrued taxes over time, it is in fact debtor's misbehavior that is causing the expenses. That should be attributable to and payable by the debtor, not the debtor's creditors. To hold otherwise would allow the debtors' creditors to simply -- would force the debtors' creditors to pay for the debtors' bad behavior. I'm not going to do that. The debtor should not be included in the estate."

Transcript of Hearing dtd March 23, 2017 at 11:1-17, *In re Clarence Jone*s (13 B 46330).

It is also important to note that section 503(b) is not completely silent on the issue of fines as it specifically provides administrative expense status for fines relating to post-petition taxes. 11 U.S.C. § 503(b)(1)(B) and (C). However, Congress declined to provide administrative expense status for any other fines or penalties in section 503(b). The City argues that even though they are not specifically listed in the statute itself, these fines are entitled priority under section 503(b)(1)(A) because of the *Reading* exception. There is simply no support in the case law or the Code for extending this exception to chapter 13.

In chapter 13, there is no receivership,[3] no creditors' committee,[4] and unless the

---

[3] In *Reading*, it was a court-appointed receiver who was administering an eight-story industrial building. The receiver did not purchase adequate insurance coverage. The negligence of the receiver and his employee caused a fire in the building that resulted in tort claims. In this district, when a chapter 11 case is filed, the debtor in possession is required to provide proof of adequate insurance, with the U.S. Trustee listed as a notice party should the policy lapse or cancel, pursuant to the Chapter 11 Operating Instructions and Reporting Requirements, Paragraph 4. These reporting requirements do not exist for chapter 13 debtors.

[4] Creditors' committees are appointed by the U.S. Trustee and ordinarily consist of unsecured creditors who hold the seven largest unsecured claims against the debtor. 11 U.S.C. § 1102. Among

debtor is engaged in a business, the chapter 13 Trustee does not have any duties under section 1106 that a trustee in a chapter 11 case would have. *See* 11 U.S.C. 1302(c). A chapter 13 debtor also does not have the same duties under the Bankruptcy Code as a debtor in possession[5] in chapter 11 or a chapter 7 liquidation case. *See*, Fed. R. Bankr. P. 2015. The trustee in an individual chapter 13 case is only required to "keep a record of receipts and the disposition of money and property received." Fed. R. Bankr. P. 2015(c)(2). There are significantly more requirements and obligations imposed on debtors in possession, c11 Trustees, court-appointed receivers, and administrators than there are on individual chapter 13 debtors and chapter 13 trustees.

The purpose of 503(b)(1)(A) in chapter 11 cases is to "facilitate rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services." *In re Badgley*, 308 B.R. 293, 297 (Bankr. E.D. Mich. 2004) (citations omitted). "However, the Chapter 11/Chapter 13 distinction is

---

other things, the committee: consults with the debtor in possession on administration of the case; investigates the debtor's conduct and operation of the business; and participates in formulating a plan. 11 U.S.C. § 1103.

[5] Upon filing a voluntary petition for relief under chapter 11 or, in an involuntary case, the entry of an order for relief, the debtor automatically assumes an additional identity as the "debtor in possession." 11 U.S.C. § 1101. A debtor will remain a debtor in possession until the debtor's plan of reorganization is confirmed, the debtor's case is dismissed or converted to chapter 7, or a chapter 11 trustee is appointed. Section 1107 places the debtor in possession in the position of a fiduciary, with the rights and powers of a chapter 11 trustee, and it requires the debtor to perform all but the investigative functions and duties of a trustee. These duties, set forth in the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, include accounting for property, examining and objecting to claims, and filing informational reports as required by the court and the U.S. trustee or bankruptcy administrator such as monthly operating reports. 11 U.S.C. §§ 1106, 1107; Fed. R. Bankr. P. 2015(a). The debtor in possession also has many of the other powers and duties of a chapter 11 trustee, including the right, with the court's approval, to employ attorneys, accountants, appraisers, auctioneers, or other professional persons to assist the debtor during its bankruptcy case. Other responsibilities include filing tax returns and reports which are either necessary or ordered by the court after confirmation. The U.S. Trustee is responsible for monitoring the compliance of the debtor in possession with the reporting requirements.

crucial." *Id.* The primary motivations and goals of a chapter 11 debtor-in-possession are meaningfully different than those of chapter 13 consumer debtors. *Id.* Chapter 13 occurs "in the context of contemplated expeditious confirmation processes with smaller financial exposures" and does not involve "crucial extensions of credit for sometimes extended lengths of time and the uncertainties of whether an operating business will be able to continue or not." *Id.* Again, Judge Barnes properly concluded that:

> These are not traditional administrative expense claims, and the cases that have allowed them as administrative expense claims are distinguishable, clearly.
>
> First of all, the cases that arise outside the context of chapter 13 are simply inapplicable in chapter 13. Unlike in chapter 13, in a chapter 11 plan you have an emergent debtor, you have other sources of funds, is not a -- is of limited calculation under a means test as it is in a 13. It is not truly the case that when you allow an administrative expense in a chapter 11 plan, that you must by definition be taking funds away from the overall fund, the overall buy. In a chapter 13 it is because the calculations are limited and set by statute.

Transcript of Hearing dtd March 23, 2017 at 10:6-21, *In re Clarence Jone*s (13 B 46330).

The debtors are incurring these additional debts to the City illegally and without leave of the Court. It is the debtors that receive the notices of the violations, not the estate or the Trustee. These fines, if they remain unpaid, are subject to significant increases over time. If they are determined to be the responsibility of the estate, then timely notice must be given to the estate to pay them before the escalation of the fines. Allowing an administrative expense, which will give priority to the City's

post-petition claim over all pre-petition creditors, would not only unfairly prejudice the pre-petition creditors by requiring the estate to pay the original fine itself, but would further prejudice them by requiring the estate to pay for the escalation of the fines that were issued without proper notice. The only remedy the Trustee and the pre-petition creditors have in the chapter 13 case for the debtors' continued negligence is to pursue dismissal of the case under section 1307(c). In chapter 13, the Trustee cannot execute the right to "step into the shoes" of the debtors in order to liquidate an estate asset like a chapter 7 or chapter 11 trustee.

The allowance of an administrative expense claim would be unfair discrimination and create an undue burden on the Trustee's administration of the chapter 13 estate. Upon entry of the order allowing the administrative expense, the City's post-petition claims for these fines would be entitled to get paid in full from plan payments before the claims of pre-petition creditors and impact the feasibility of the plan. The Trustee would have to process these claims and adjust the disbursement priorities as set forth in the confirmed plan in order to pay the City first. As further explained by Judge Barnes:

> [P]ost-petition expenses of the debtor -- the debtor creates and incurs debts that are new debts, new responsibilities. Debtors don't get rolling fresh starts. They don't get to keep rolling in post-petition claims.
> And to be clear, the argument that's being put forth by the city has a dangerous irritative effect, which is that a debtor could continue even after the first administrative expense claim for the life of the plan to incur additional tickets and they could be added to the plan, or additional tickets that could be added to the plan. Before that ended, it is potential to their -- and, trust me, it's not just an attenuated guess on my part, I've seen debtors incur a lot

of tickets, and that's why we're here because they've got a situation. But I've seen debtors incur a lot of would be paid before and in many case would impact the feasibility of the plan because plan payments are determined prior to confirmation based upon the amount of pre-petiton claims. tickets post-confirmation. Before that ended, the prepetition creditors would get nothing under the plan, and only the city would be paid because only administrative expenses could be funded under the plan. So it is not a zero sum gain as far as I'm concerned, it is in fact a situation where the city of Chicago is taking money from the hands of unsecured creditors and putting it in its own pocket.

Transcript of Hearing dtd March 23, 2017 at 8:9-9:9, *In re Clarence Jones* (13 B 46330).

Additionally, should the City be successful in obtaining an administrative expense claim for these post-petition claims, the door would be opened to a multitude of other potential creditors seeking similar treatment. Fines, penalties, or arguably any expenses that are related to a debtor's use of personal or real property including, but certainly not limited to, personal injury claims, insurance disputes, repairs and maintenance, permits, licenses, and utilities could all be claimed to "benefit the estate" under the *Reading* exception. An allowance of the City's administrative expense claim would create a slippery slope for all sorts of claims from post-petition creditors.

B.     The City did not object to confirmation of the debtors' plans

The City's Brief focuses heavily on the form confirmation order used in this District. The order states that "[a]ll property of the estate, as specified by 11 U.S.C. sections 541 and 1306, will continue to be property of the estate following

confirmation, unless (1) the plan provides for surrender of the property, or (2) the property is sold pursuant to the plan or court order." There was no evidence presented by the City of exactly when this District started to enforce the use of this form order or that it was specifically intended to negate the result of *Chicago v. Fisher* (*In re Fisher*), 203 B.R. 958 (N.D. Ill. 1997). While this order arguably extends the application of the automatic stay provisions of section 362(a)(3) to the debtors' vehicles until the case is completed, it does not change the nature of the bankruptcy estate created. It should not be interpreted to confer upon the chapter 13 debtor, estate, or Trustee all the of the same duties and responsibilities of debtors in possession and trustees in Chapter 11 and Chapter 7 cases. It must be interpreted in the context of the chapter 13 cases it was entered in. As previously discussed, the individual chapter 13 estate is not the same as a chapter 11 or chapter 7 estate and the Code does not treat it as such.

In addition, at the time of confirmation, the Trustee was not aware that any administrative expense claims were a potential consequence of such an order. The City did not raise any of these issues at confirmation or object to the entry confirmation order.[6] Had the Trustee been informed that this confirmation order could lead to the allowance of such administrative claims, the Trustee would have objected given the potential impact on the feasibility of the plan and the administration of the case. If the City was so concerned about the application of section 362(a)(3) to post-petition claims based on the debtors' history of violations, it

---

[6] In each of these consolidated cases, the City was a pre-petition creditor listed on Schedule F. In addition, in *In re Steenes*, *In re Allen*, *In re Woodward*, *In re Dudely*, and *In re Henry* the City timely filed proofs of claim for pre-petition debt.

could have raised the issue at confirmation or attempted to negotiate different terms with the debtors.

## II. The Appropriate Relief for the City is to Recover Directly from the Individual Debtor, Move for Relief from the Automatic Stay, or Seek Dismissal of the Case.

The debtors are acting in bad faith and to the detriment of all their creditors by incurring these violations. The City has the remedy available of collecting directly from the debtors or moving for relief from the automatic stay pursuant to section 362(d) in order to repossess the vehicles for the post-petition claims. As further noted by Judge Barnes:

> The city's right, but for the right to necessarily exercise control over estate property continue to exist as any post-petition creditor has those rights. They could sue in state court if that were the case to the extent that they were still, because of the stay -- who's emergent -- this is a -- the plan's confirmed. But even if they felt bound by the stay, there's a simple remedy, they move for relief from stay. It is not a zero sum gain.
>
> If in fact the debtor is not adequately protecting estate collateral, which is the car, by incurring expenses with respect to the city, then that is grounds for relief from stay. I understand the city does not want to incur a $175 motion for relief from stay expense in order to enforce its rights. It's not my job to give creditors further or lesser rights than are not set forth in the Bankruptcy Code. The Bankruptcy Code says what it says.

Transcript of Hearing dtd March 23, 2017 at 9:12-10:6, *In re Clarence Jones* (13 B 46330)

If the vehicle is necessary to complete plan payments and the debtors cannot address the City's claims directly with the City and outside of the chapter 13 plan,

then the appropriate relief is for the case to be dismissed or converted pursuant to section 1307(c), not an administrative expense claim for the City. The City acknowledged in their own Motion that it would be cause for dismissal. As stated in the City's Motion (*In re Jones*, 16 B 46330, Docket No. 21):

> Cause would certainly include the situation where the trustee or creditor finds that the debtor is continuously causing the estate to act negligently or illegally. Gross mismanagement of the estate is expressly listed as "cause" under § 1112(b) applicable in chapter 11 cases. "Since this language parallels the chapter 11 conversion and dismissal provision, decisions under Bankruptcy Code §1112(b) inform the analysis of § 1307(c)." *See In re Nelson*, 343 B.R. 671, 674 (B.A.P. 9th Cir. 2006).

City's Motion at page 12.

Judge Barnes also acknowledged that this remedy was available to the City when stated:

> There is even one other source of possible resolution is they can move to have the case dismissed. They could say that the plan is not being performed in good faith because the debtor is doing what it's doing with respect to this. That's within the city's purview. But having the city granted an administrative expense on these grounds is not.

Transcript of Hearing dtd March 23, 2017 at 11:21-12:3, *In re Clarence Jone*s (13 B 46330).

Bankruptcy Code section 1307(c) ("Conversion or dismissal") permits the court either to dismiss or to convert a case to chapter 7, "whichever is in the best interests of creditors and the estate, for cause" based on a non-exhaustive list of factors. 11 U.S.C. § 1307(c). Lack of good faith is sufficient cause for dismissal of a chapter 13 case. *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1991). Section 1307(c) should

be determined by looking to the same totality of circumstances standard used in reviewing good faith under section 1325(a).  *Id.* at 1355.  Factors to be considered include: (1) the nature and potential non-dischargeability of scheduled debts; (2) the timing of the case filing; the circumstances of how particular debts were incurred; (3) the debtor's motive for filing; (4) how the debtor's actions affected creditors; (5) the debtor's treatment of creditors before and after filing; and  (6) whether the debtor has been forthcoming with the court and creditors.  *In re Sidebottom*, 430 F.3d 893, 899 (7th Cir. 2005) (citing *Matter of Love*, 957 F.2d at 1357).

If the Debtor is unable to address the City's claims directly and maintain the feasibility of the current plan, then the proper remedy for causing the estate asset to act negligently or illegally is dismissal or conversion.  This allows for all of the Debtors' creditors to deal directly with the debtors as well.  It is in the best interests of creditors for the case to be dismissed rather than allow the debtors to hide behind the automatic stay while they continue to perform illegal actions at the creditor's expense.  The Debtor may also file another case, subject to the consequences of multiple filings, and deal with all prepetition creditors fairly in the subsequent case. The debtors did not object to the City's Motions or file any responses.  The debtors should not be able to use an administrative expense claim to avoid the consequences of dismissal for bad faith and to the detriment of their pre- petition creditors. Chapter 13 should not be used by debtors as a means to diminish the estate for pre-petition creditors or to delay payment to pre-petition creditors with continuous post-petition violations.

## CONCLUSION

For the foregoing reasons The Trustee respectfully requests that this Court affirm the decision of the Bankruptcy Court and find that the Appellant is not entitled to an administrative expense pursuant to section 503 of the Bankruptcy Code.

Dated:     June 7, 2017                    Respectfully submitted,

                                           /s/ Lauren L. Tobiason
                                           Lauren L. Tobiason
                                           Attorney for Trustee-Appellant,
                                           Marilyn O. Marshall

Marilyn O. Marshall, Trustee
224 S. Michigan Ave.
Suite 800
Chicago, IL 60604
(312) 431-1300

## CERTIFICATE OF COMPLIANCE

I, Lauren L. Tobiason, an attorney, herby certify pursuant to Fed. R. Bankr.

P. 8015(a)(7)(C) that this brief complies with the type and volume limitation. This

brief is a total of 4709 words.


Dated:    June 7, 2017                    By:    /s/ Lauren L. Tobiason
                                                 Lauren L. Tobiason
                                                 Attorney for Trustee-Appellee,
                                                 Marilyn O. Marshall

Marilyn O. Marshall, Trustee
224 S. Michigan Ave.
Suite 800
Chicago, IL 60604
(312) 431-1300