```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

| | | |
|---|---|---|
| The City of Chicago, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 17 C 2308 (lead case) |
| | ) | |
| Marilyn O. Marshall, not | ) | related cases: |
| individually but solely as the | ) |    17 cv 2319 |
| chapter 13 trustee of the | ) |    17 cv 2316 |
| bankruptcy estates of Chester | ) |    17 cv 2309 |
| B. Steenes, et al. | ) |    17 cv 5361 |
| | ) |    17 cv 2311 |
| Appellee. | ) |    17 cv 2314 |
| | ) | |

## MEMORANDUM OPINION AND ORDER

In this consolidated bankruptcy appeal, the City of Chicago seeks reversal of the bankruptcy court's decisions, in two separate orders affecting seven individual cases, of the City's motions under § 503(a) of the Bankruptcy Code for allowance and priority payment of the respective debtors' post-petition traffic fines as administrative expenses. For the reasons that follow, I affirm the decisions of the bankruptcy court.

I.

The facts underlying these appeals are straightforward. On various dates between 2013 and 2016, each of the seven debtors filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. Thereafter, the debtors incurred fines as the

registered owners of vehicles involved in parking or traffic violations of Chicago's Municipal Code. In each bankruptcy case, the City sought payment of the outstanding post-petition traffic fines as administrative expenses pursuant to § 503 of the Bankruptcy Code, which, pursuant to § 507(a), would give these claims priority status (second only to domestic support obligations), ahead of pre-petition creditors in the distribution of the assets of the bankruptcy estates. *See* 11 U.S.C. § 507(a)(2). Six of the present appeals challenge the oral ruling of Judge Barnes, who denied the City's motions at the close of a collective hearing on March 23, 2017.[1] The seventh appeal is from the July 20, 2017, written decision of Judge Hollis, who denied the City's substantially identical motion in a separate case.[2]

Before the bankruptcy court, the City argued that seeking payment under § 503 was the only avenue available to it for enforcing the post-petition traffic fines. The City explained that the automatic stay prevents it from proceeding through its ordinary regime of progressive sanctions, in which the City

---

[1] *In re Jones*, 17-cv-2314 (13-bk-46330); *In re Steenes*, 17-cv-2308 (14-bk-16692); *In re Allen*, 17-cv-2309 (14-bk-17256); *In re Woodward*, 17-cv-2311 (14-bk-33498); *In re Dudley*, 17-cv-2316 (16-bk-08230); and *In re Henry*, 17-cv-2319 (16-bk-20534). On May 5, 2017, I consolidated these appeals for a single briefing schedule.
[2] *In re Haynes*, 17-cv-5361 (15-bk-39945). On July 28, I granted the City's motion to reassign and consolidate this case and for supplemental briefing.

2

tickets, immobilizes, tows, and ultimately sells or destroys vehicles involved in traffic violations. Compounding the problem, the City argued, is that the confirmation order entered in these cases (as in most cases in this district) overrides the default provision in Chapter 13 cases that confirmation of the bankruptcy plan vests the estate's property in the debtor. *See* 11 U.S.C. § 1327(a) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."). Indeed, the confirmation orders entered in these cases provide: "All property of the estate, as specified by the [sic] 11 U.S.C. section 541 and 1306, *will continue to be property of the estate following confirmation*..." *In re Haynes*, 569 B.R. 733, 741 (Bankr. N.D. Ill. 2017) (alteration in original).[3] The City argued that because the vehicles remain the property of the estate for the duration of the bankruptcy (which may be three or five years), and because the automatic stay shields the estate's property from the City's progressive enforcement regime throughout that period, fundamental fairness mandates that the City be allowed to collect the post-petition traffic fines as administrative expenses.

---

[3] Substantially identical confirmation orders were entered in each case. *See, e.g.,* Appellant's Mot. to reassign, Exh. A-1 at 12.

Judge Barnes rejected the City's argument, concluding that the City's claim "runs contrary to the policy of the fresh start," which mandates that "[c]laims prior to the petition date are dealt with in the bankruptcy case, claims after are not." Tr. of Bankr. Order at 4. He found that the City's attempt to collect post-petition fines as administrative expenses had "a dangerous irritative effect, which is that the debtor could continue even after the first administrative expense claim for the life of the plan to incur additional tickets and they could be added to the plan," depleting the assets available to unsecured creditors. *Id*. at 8-9. Judge Barnes concluded that "the traditional set of circumstances holds true, which is the debtor remains responsible for these claims," and that the City had the same collections options as any post-petition creditor: it could move for relief from the stay and pursue state court remedies, or it could seek dismissal of the bankruptcy case. *Id*. at 9-11.

In *Haynes*, Judge Hollis denied the City's motion in a written opinion. She concluded that the post-petition traffic tickets did not qualify as administrative expenses under *Matter of Jartran, Inc*., 732 F.2d 584 (7th Cir. 1984), and she declined to extend the alternative framework of *Reading Co. v. Brown*, 391 U.S. 471 (1968)—the City's foundational authority—to the facts of this case. 569 B.R. at 740. Nevertheless, Judge Hollis

considered whether the City had satisfied the test for recovering administrative expenses under *Reading* and concluded that it had not. Finally, Judge Hollis rejected the City's argument that 28 U.S.C. § 959(b) mandates administrative expense treatment of the City's claims.

On appeal, the City echoes the arguments it raised below, adding the overarching theme that the bankruptcy court's decisions effectively immunize the debtors' estates from the law. The City also assigns specific errors to the bankruptcy courts' analyses and urges me to hold that under *Reading*, its claims for payment of post-petition traffic fines should receive priority as administrative expenses.

II.

Administrative expense claims are governed by § 503(b) of the Bankruptcy Code, which provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses ... including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]

11 U.S.C. § 503(b)(1)(A). Claims are entitled to administrative expense status only if they comport "with the language and underlying purposes of § 503." *Matter of Jartran*, 732 F.3d at

5

586. To satisfy that standard, a creditor ordinarily must establish, by a preponderance of the evidence, that the claim: 1) arises from a transaction with the debtor-in-possession; and 2) is "beneficial to the debtor-in-possession in the operation of the business." *Id.* at 587. This test reflects a primary objective of the administrative expense priority, particularly in Chapter 11 cases, of incentivizing creditors to extend credit to bankrupt businesses so that they can carry on operations during reorganization in hopes of maximizing assets available to creditors. *See In re Resource Tech. Corp.*, 662 F.3d 472, 476 (7th Cir. 2011).

In *Reading v. Brown*, 391 U.S. 471 (1968), however, where the post-petition creditor was not a voluntary creditor of a bankrupt firm, but rather a victim of the bankrupt estate's negligence, the Court fashioned a different test premised on the fundamental statutory objective of fairness in bankruptcy. *Id.* at 477-78. In view of that "decisive" consideration, the Court concluded that tort claims arising from the continued operation of a bankrupt business should be treated as administrative expenses, even though they cannot be said to benefit the estate. *Id.*

The Seventh Circuit explained the *Reading* Court's rationale in *In re Resource Technology*:

> Tort liability is an expense of doing business, like labor or material costs, and should be treated the same way. Businesses operating in bankruptcy that were excused from tort liability would have an inefficient competitive advantage over their solvent competitors—and deficient incentives to use due care in the operation of the business. It could indeed be argued that in the interest of safety, insolvent firms, not being deferrable by threat of tort suits, should not be allowed to operate at all. *Reading* strikes a compromise between the safety interest and the interest in saving bankrupts from premature liquidation: the bankrupt that continues to operate (normally under Chapter 11) must give its tort victims priority access to such assets as the bankrupt estate retains.

662 F.3d at 476.

The City argues that it meets the *Reading* test, under which it must show: 1) that the post-petition traffic tickets arise out of a transaction with the estate; and 2) that fundamental fairness weighs in favor of granting priority administrative status to the City's request for payment.

On the first issue, the City argues persuasively that the administrative regime established by the Chicago Municipal Code makes clear that the debtors' post-petition traffic fines are liabilities of their bankruptcy estates. The Municipal Code provides that the "person in whose name the vehicle is registered with the Secretary of the State of Illinois ... shall be prima facie responsible for the violation[.]" *See* Chi., Ill., Code § 0-100-030. Judge Hollis viewed this provision as dispositive of the debtor's liability for the tickets. But the

Code elsewhere provides that the registered owner's prima facie liability may be rebutted by proof that the respondent is not the vehicle's actual owner. *See* Chi., Ill., Municipal Code § 9-100-6. Meanwhile, proof that someone other than the owner was operating the vehicle at the time of the infraction does not rebut the owner's liability. *See Idris v. City of Chicago, Ill.*, 552 F.3d 564, 565 (7th Cir. 2009). These authorities support the City's argument that as the actual owner of the vehicles involved in the post-petition violations, the bankruptcy estates are responsible for the debts.

Where the City's argument falls short is with respect to the second prong of the *Reading* analysis. The City points to a host of authorities from the First, Second, Fourth, Fifth, Sixth, and Eleventh Circuits, which, in its view, stand for the broad proposition that "post-petition involuntary creditors must receive administrative expenses priority." Supp. Br. at 17-18. While it is true that some appellate courts have upheld administrative expense priority for post-petition taxes, fines, penalties, and tort claims on the authority of *Reading*, none of the City's authorities establishes the sweeping rule the City presses. *See, e.g., In re N.P. Min. Co., Inc.*, 963 F.2d 1449, 1454-55 (11th Cir. 1992) ("The *Reading* Court did not hold...that in *all cases* costs normally incident to operation of a business are administrative expenses. Only in '*some cases*,' the Court

stated, do they merit such status.") (original emphasis); *see also In re Munce's Superior Petroleum Products, Inc.*, 736 F.3d 567, 571 (1st Cir. 2013) (post-petition environmental violation fines and penalties are administrative expenses); *Matter of H.L.S. Energy Co., Inc.*, 151 F.3d 434 (5th Cir. 1998) (post-petition cost of plugging unproductive wells in compliance with state law); *In re Sunarhauserman, Inc.*, 126 F.3d 811 (6th Cir. 1997) (post-petition ERISA obligations arising out of employees' post-petition employment). More importantly, none of the City's authorities involves an individual bankruptcy under Chapter 13. The City insists that Chapter 11 and Chapter 13 are "analogous," but they are not identical, and some of the distinctions bear importantly on the issue of fundamental fairness.

First, the City's argument loses sight of at least one common-sense distinction between individuals and business entities: individuals do not exist for the sole purpose of making money for stakeholders. In an effort to paint Chapter 11 and Chapter 13 bankruptcies as materially identical, the City argues that a "chapter 13 estate is a continuation of the individual debtor as a going concern for the benefit of creditors while a chapter 11 estate is a continuation of a business entity as a going concern for the benefit of creditors." But while it may rationally be argued that every act undertaken by a business serves the ultimate goal of increasing

the entity's assets for its owners and creditors, the City cannot seriously contend that the same is true of individuals. Because a debtor living her life is not merely "doing business," not every act she undertakes that may result in a liability can reasonably be construed as a "cost of doing business" that in fairness must be borne by her pre-petition creditors.

The Seventh Circuit is mindful of this distinction. In *In re Palomar v. First American Bank*, 722 F.3d 992 (7th Cir. 2013), the court explained that "Chapter 13 is only analogous to a reorganization; the debtor does not become a slave....he pays his creditors, over a three- or five-year period, as much as he can afford. Often this makes the creditors better off than they would be in a liquidation, for the assets, though important to the debtor, may have little market value." *Id*. at 995. In other words, while allowing a Chapter 13 debtor to continue in possession of the estate's assets "often" inures to the benefit of his creditor, the regime also preserves the enhanced value of the assets to the debtor personally.

Nor does the Court's reasoning in *Reading* support the City's individual *qua* business argument. In *Reading*, the Court justified holding the estate responsible for the administrator's post-petition negligence by observing that "[t]he 'master,' liable for the negligence of the 'servant' in this case was the business operating under a Chapter XI arrangement for the

10

benefit of creditors and with the hope of rehabilitation." 391 U.S. at 479. While the City is certainly correct that Chapter 13, no less than Chapter 11, creates a legally independent estate, the "master/servant" analysis the Court relied upon in *Reading* breaks down in the Chapter 13 context. Unlike in the Chapter 11 context, where holding the estate liable on a theory of respondeat superior for the misdeeds of its receiver creates a positive incentive for the receiver to operate the business with due care (lest the business be forced to cease operations and leave creditors with no hope of recovery beyond the liquidation value of its assets), holding the debtors' estates liable for traffic fines creates a perverse incentive for the debtors to be heedless of City's traffic laws, knowing that some or all of the cost of non-compliance will be borne by their creditors. As Judge Barnes observed, this result is at odds with the basic bankruptcy principle that debtors are allowed one "fresh start," not a "rolling fresh start" that begins anew with each post-petition debt.

The City strains to escape this conclusion, arguing that the "quasi-criminal act that the City has fined" is not the vehicle operators' traffic violations, but rather the vehicle owners' act of "allowing their vehicles to be used for speeding, running red lights, and other violations." Supp. Br. at 22-23. For this argument, the City relies on *City of Chicago v. Hertz*

*Commercial Leasing Corp.*, 375 N.E. 2d 1285, 1291 (Ill. 1978)), but *Hertz* does not stand for the proposition that a vehicle owner is directly liable for allowing the vehicle to be used in violation of the law. Instead, *Hertz* holds that Chicago's Municipal Code establishes a vehicle owner's vicarious liability for the conduct of those it authorizes to operate the vehicle. *Id*. at 344. In other words, it creates respondeat superior liability of the kind that supported the Court's analysis in *Reading*, but that does not support the City's claim for priority in the Chapter 13 context because of the distinct incentive structure involved in individual debtor cases.

Other distinctions between Chapter 11 and Chapter 13 support the conclusion that the bankruptcy courts' decisions below are consistent with fundamental fairness. For example, unlike the Chapter 11 receiver who ordinarily bears no personal responsibility for her administration of the estate, Chapter 13 debtors who incur post-petition traffic fines remain personally liable for those fines at the termination of the bankruptcy. Indeed, as Judge Barnes noted, the City retains the rights any other post-petition creditor has to collect its debts outside of the bankruptcy proceedings, either by moving to lift the stay or by seeking dismissal of the bankruptcy. That the City may not prevail on such motions does not render these remedies "immaterial and impossible" as the City submits. Supp. Br. at

23. To the contrary, the City's own argument reveals that leaving the City to pursue remedies against the debtor is consistent with Congress's intent. *See id*. at 24 ("Congress intended the vehicles to revest in the debtors upon confirmation to allow the City to pursue its enforcement rights without asking for permission. But the form confirmation order brought the City into the bankruptcy court by shifting responsibility for violations to the bankruptcy estate.").

This portion of the City's argument reveals that the essence of its claim is its objection to the bankruptcy courts' entry of confirmation orders providing that the estate's assets remained the property of the estate throughout the duration of the bankruptcy proceedings. But whether that confirmation order is appropriate, either in these cases specifically or as a matter of practice in this district, is not an issue properly presented for resolution in these appeals. The question before me is whether fundamental fairness compels granting priority administrative expense status under *Reading* to the City's claim for post-petition parking fines. For the reasons explained above, I conclude that the answer is no.

Nor am I persuaded otherwise by the City's insistence that denying its motion for administrative expense priority renders the estates "immune from the law." The City argues that governmental units "pass laws to protect the health, safety and

13

welfare of their citizens," and have "a strong interest in enforcing traffic ordinances for the safety and convenience of the public." Supp. Br. at 20 (quoting *Grant v. City of Chicago*, 594 F. Supp. 1441, 1447 (N.D. Ill. 1984)). The City insists that unless it is allowed to recover from the estates for the debtors' post-petition tickets, it enjoys "nothing more than the theoretical privilege of requiring compliance without any actual requirement." Supp. Br. at 2. But as just explained, that is not true, since the City retains its right to pursue the debtors themselves, who are undoubtedly the more susceptible to being induced by the fines to comply with the law.[4] Accordingly, the City's alarmist invocation of careless drivers threatening the lives of children in safety zones militates against its position, rather than in its favor.

Finally, the City argues that 28 U.S.C. § 959(b), which requires a debtor in possession to manage the estate's property "in the same manner that the owner or possessor would be bound to do if in possession thereof," requires administrative expense priority treatment of its post-petition claims. The City cites,

---

[4] While the debtors' own liability for the fines is also vicarious under the Municipal Code, they nevertheless have a greater interest than the estates do in preserving their rights to the vehicle. As the court noted in *Palomar*, the estate's assets in a Chapter 13 case generally have greater value to the debtor than to the creditors for whose benefit the estate is managed, and the consequences of non-compliance—progressive sanctions culminating in forfeiture of the vehicle—are certainly more threatening to the debtors than to the estates.

14

*inter alia, In re N.P. Mining Co., Inc.*, 963 F.2d 1449, 1458 (11th Cir. 1992), but a review of the court's reasoning in that case shows that it is inapplicable on the facts here. In *N.P. Mining*, the court reversed the denial of an administrative expense priority claim for the payment of civil penalties for a mining company's post-petition environmental violations. The court concluded that priority was warranted by the policy embodied by § 959(b), reasoning: "it makes sense that when a trustee or debtor in possession operates a bankruptcy estate, compliance with state law should be considered an administrative expense. Otherwise, the bankruptcy estate would have an unfair advantage over nonbankrupt competitors." *Id*. at 1458. The court's reasoning does not advance the City's argument here, since individual bankruptcy estates are not in "competition" with non-bankrupt individuals, nor does denial of the City's motion give debtors a "competitive advantage" over non-bankrupt individuals. In fact, one could argue that the opposite is true, since allowing the debtors to pass the cost of post-petition non-compliance with traffic laws on to their pre-petition creditors would presumably allow them to use the vehicles at a lower overall cost than non-bankrupt individuals.

III.

For the foregoing reasons, the decisions of the bankruptcy court are affirmed.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

Dated: November 27, 2017